UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE GORDON,<br><br>  Plaintiff,<br><br>  v.<br><br>ELAINE DUKE, Acting Secretary,<br>U.S. DEPARTMENT OF<br>HOMELAND SECURITY,<br><br>  Defendant. | Civil Action No. 14-917 (JEB) |

MEMORANDUM OPINION

Over the past decade, *pro se* Plaintiff Jacqueline Gordon, an employee of the Federal Emergency Management Agency, has filed a series of unsuccessful discrimination complaints with the Equal Employment Opportunity Commission. Plaintiff then brought this suit, alleging principally that her EEOC complaints triggered numerous incidents of retaliatory conduct, including behavior among her co-workers that created a hostile work environment. Defendant now moves to dismiss the Complaint or, alternatively, for summary judgment. The Court will grant Defendant's Motion to Dismiss as to several counts; as to the remainder, it concludes that the undisputed facts also favor judgment for the Government.

I.   **Background**

Gordon, a black woman over 40 years of age, was at all relevant times employed by FEMA, a component of the Department of Homeland Security. See Def. MSJ, Exh. 3 (Affidavit of Jacqueline Gordon) at 1, 8. In this suit, she reprises a long-running dispute with her employer. Before turning to the facts at issue in this Complaint, the Court will recount the somewhat-involved procedural history of the case.

1

A. Procedural History

As the reader will readily see, Gordon's disenchantment with FEMA is hardly of recent vintage. In September 2004, she filed a complaint with the EEOC alleging discrimination based on gender, race, color, and age, as well as retaliation for prior protected activity. Gordon v. Beers, 972 F. Supp. 2d 28, 31 (D.D.C. 2013). The EEOC found in favor of the Agency. Id. Plaintiff believed that her EEO complaint had triggered retaliatory conduct, as well as treatment by her colleagues and supervisors that constituted a hostile work environment. In response, she filed a second complaint before the EEOC in January of 2007. Id. This later complaint, she alleged, resulted in an increasingly hostile work environment. Id. Once again, the EEOC resolved the matter in favor of DHS, and Plaintiff then brought suit (Civil Case No. 09-2211) against the Agency in November 2009. Id. at 32-33.

In May 2011, this Court dismissed several counts of retaliation for which Plaintiff had failed to exhaust her administrative remedies. Gordon v. Napolitano, 786 F. Supp. 2d 82, 84-85 (D.D.C. 2011). After allowing discovery on the remaining claims, the Court granted summary judgment for DHS in September 2013, finding that Plaintiff had failed to make out a *prima facie* case of retaliation and that she had cited no record evidence supporting a hostile work environment. Beers, 972 F. Supp. 2d at 31.

Undeterred, Gordon filed a third EEO complaint in 2012. See Def. MSJ, Exh. 5 (2012 EEO Compl.). This one fared no better than the first two, as the EEOC deemed her complaint unfounded. Id., Exh. 4 (Final Agency Decision) at 8. Plaintiff then filed this second *pro se* suit on May 29, 2014, making essentially the same claims based on a new set of workplace grievances. DHS once again moved to dismiss or for summary judgment on August 22, 2014, see ECF No. 8, and the Court ordered Plaintiff to respond by September 12, 2014, warning that it

2

would otherwise grant the Motion and enter judgment against her. See ECF No. 9. Even after the Court granted Gordon an extension until October 14, 2014, see Minute Order of September 12, 2014, she declined to respond. Pursuant to Local Rule 7(b), as it read at the time, the Court then granted DHS's Motion as conceded on October 21, 2014. See Minute Order. Nearly three months later, Plaintiff moved for reconsideration. See ECF No. 13. In her 160-page submission, she gave no basis for her motion — *e.g.*, excusable neglect or new evidence — nor did she include briefing responsive to DHS's dispositive Motion. Instead, she attached many exhibits, a statement of material facts, and bullet-point pages that accused the Court of corruption, misconduct, and tampering with mail. The Court thus denied reconsideration, and Plaintiff appealed.

In June 2017, the D.C. Circuit, apparently treating the appeal as relating to summary judgment, remanded the case for further proceedings in light of an intervening case, Winston & Strawn, LLP v. McLean, 843 F.3d 503 (D.C. Cir. 2016). See Gordon v. Kelly, No. 15-5084 (D.C. Cir. June 2013, 2017) (*per curiam*). Per Winston, a district court cannot treat motions for summary judgment as conceded for want of opposition. Id. at 508. Rather, the court must "satisf[y] itself that the record and any undisputed facts justify granting summary judgment." Id. at 507. The D.C. Circuit expressly reaffirmed, however, that a district court may "consider [a] fact undisputed if it has not been properly supported or addressed as required by Rule 56(c)." Id. at 507 (citing Fed. R. Civ. P. 56(e)(2)). Rule 56(c), in turn, requires that any non-moving party support disputed facts by citing particular parts of the record, such as depositions, documents, or affidavits, or otherwise show that materials cited establish a genuine dispute of fact.

At the time that this Court initially considered Defendant's Motion for Summary Judgment, Plaintiff fell far short of Rule 56(c)'s requirements. She had made no effort to submit

3

a counterstatement of material facts, as required by Local Rule 7(h)(1). Nor had she supported the allegations in her Complaint with record citations or otherwise disputed Defendant's factual assertions. Even after receiving a month-long extension to address DHS's Motion, Plaintiff wholly failed to respond. Although Gordon later submitted a counterstatement of facts, she did so nearly three months <u>after</u> the Court had granted summary judgment in favor of DHS, as part of her Motion for Reconsideration.

After the D.C. Circuit remanded the case, this Court asked the parties for supplemental briefing on whether to treat Defendant's factual assertions as undisputed. <u>See</u> Minute Order of July 7, 2017. In other words, the Court inquired whether it should rule on the Motion for Summary Judgment as the record stood in October 2014 or whether it was required to look at subsequent filings. Plaintiff responded with a four-page Motion for Relief, which rehashed conclusory allegations from the Complaint. <u>See</u> ECF No. 23. She offered no argument as to whether this Court should treat Defendant's facts as undisputed nor any attempt to reopen the record.

Although <u>Winston</u> precludes the Court from treating Defendant's Motion as conceded, the decision did nothing to upset a district court's settled authority to treat facts as undisputed, even when a party belatedly challenges them. <u>See</u> 843 F.3d at 507 ("[A] court must be able to evaluate an inadequately supported assertion of material fact and deem it not materially disputed, such that summary judgment is warranted in whole or in part.") (quoting <u>Grimes v. Dist. Columbia,</u> 794 F.3d 83, 92 (D.C. Cir. 2015)). Rather, the D.C. Circuit has long held that a district court may exercise its discretion to "implement[] a scheduling order at the beginning of [a case] and insist[] on its reasonable observance during litigation." <u>Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner</u>, 101 F.3d 145, 152 (D.C. Cir. 1996). In <u>Jackson</u>, for

instance, the district court denied a party's motion to supplement his statement of material facts in dispute, which consisted of "five one-sentence entries" and was "devoid of citations to the record." Id. at 148-49. Instead, the district court deemed the defendant's recitation of the facts "uncontroverted" and thus granted summary judgment in its favor. Id. at 149. The D.C. Circuit affirmed, citing the court's "prerogative to manage its docket, and its discretion to determine how best to accomplish this goal." Id. at 151.

At the time this Court granted summary judgment, Plaintiff had similarly failed to adhere to the Court's scheduling order or dispute Defendant's facts. That the D.C. Circuit has since remanded the case so that this Court can apply the correct legal standard does nothing to change the facts as they existed at that time. "On remand, the decision whether to hear new evidence is within the discretion of the trial court." Carter Jones Lumber Co. v. LTV Steel Co., 237 F.3d 745, 751 (6th Cir. 2001); see also Modern Elec., Inc. v. Ideal Electronic Sec. Co., Inc., 145 F.3d 395, 397 (D.C. Cir. 1998) (holding district court did not abuse its discretion by denying request to reopen the record); Otero v. Mesa Cty. Valley Sch. Dist. No. 51, 628 F.2d 1271 (10th Cir. 1980) (holding district court did not err by refusing to reopen the record when appellate court "did not remand with directions to reopen the case"). The Court therefore considers the record as it stood in October 2014 and treats Defendant's statement of facts as undisputed for purposes of summary judgment. See Federal Rule of Civil Procedure 56(e)(2).

B. Factual History

This case picks up where Gordon's first suit left off. She again alleges that her supervisors and co-workers retaliated against her for filing her 2004 and 2007 EEO complaints. See Compl., ¶ 4. Principally, Plaintiff claims that her supervisors denied her a merited promotion. Id., ¶ 5. In DHS, as with most government agencies, an employee's pay is pegged to

5

the "General Schedule" or GS Scale, which classifies all positions and the appropriate pay. See Def. MSJ, Exh. 6 (Affidavit of Ryan Batten), ¶ 33. At all times relevant, Plaintiff was an employee at the GS-5 level, meaning she provided clerical and technical work in support of management. See Compl., Exh. 2 at 12 ("Request for Upgrade of Program Support Assistant Jacqueline Gordon"). In May 2011, Gordon requested a promotion to the GS-6 scale. Id. (At times, the record indicates she also sought a promotion to GS-9, a classification reserved for program analysts who substantively evaluate the effectiveness of government programs or policies. See Batten Aff., ¶ 42.)

Plaintiff sought reclassification by way of an "accretion of duty" promotion. Id. An employee may receive such a promotion when her position should be "reclassified at a higher grade," such as when "duties and responsibilities of the position have increased over a period of time." Wiley v. Glassman, 511 F.3d 151, 156 (D.C. Cir. 2007) (internal quotation marks omitted). To that end, Gordon requested a "desk audit," which "allows an employee to have her duties independently reviewed by a human resource specialist. If the audit reveals her responsibilities are at a higher level than her position is graded, she is promoted to the higher level." Chambers v. Burwell, 824 F.3d 141, 142 (D.C. Cir. 2016).

The desk audit revealed that Plaintiff's responsibilities were indeed commensurate with her current grade level (the GS-5 scale) and recommended against the requested promotion. See Compl., Exh. 2 at 12. DHS therefore denied the step increase in August 2012. See Def. MSJ, Exh. 1 (Affidavit of Eric Leckey), ¶¶ 42, 44. Plaintiff contested the Agency's decision and (at least before the EEOC) alleged several irregularities in the process, including 1) an undue delay receiving the results of her desk audit, and 2) the receipt of a yearly performance evaluation from an improper official. See 2012 EEO Compl. at 6-7. Plaintiff, moreover, claimed that she had

6

suffered several other retaliatory incidents, including an improper transfer from the Washington Design Center to Crystal City, Virginia. Id. Finally, the Complaint alleges "[u]nlawful [h]arassment" from her co-workers and supervisors. See Compl., ¶ 10.

Gordon also tacks on a claim for "Federal Law Whistleblower Retaliation," which the Court construes as a claim under the Whistleblower Protection Act. Perhaps alternatively, she attributes the Agency's actions to direct discrimination, not just retaliation, based on her race and age. See Id. The Complaint also makes a passing reference to the Equal Pay Act and discrimination on the basis of national origin.

## II. Legal Standard

The Government first argues that this Court should dismiss Plaintiff's Whistleblower Protection Act challenge under Federal Rule of Civil Procedure 12(b)(1). To survive such a motion, Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3 (2006); Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction. . . ." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005).

Turning to Plaintiff's Equal Pay Act challenge, the Court considers whether she properly stated a claim under Federal Rule of Civil Procedure 12(b)(6). That Rule provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be

granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted).

For the remaining claims, the Government argues that the Court should treat its Motion as one for summary judgment under Rule 56. Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

**III. Analysis**

"Courts must construe *pro se* filings liberally." Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999). In that vein, this Court teases out claims under 1) the Whistleblower Protection Act, 2) the Equal Pay Act, and 3) Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. It addresses each in turn.

A. Whistleblower Protection Act

Plaintiff captions one count of her Complaint "Federal Law Whistleblower Protection." Compl., ¶ 6. Granting her the benefit of the doubt, the Court treats this claim as brought under the relevant federal whistleblower law, the Whistleblower Protection Act, Pub. L. No. 101-12,

8

103 Stat. 16 (1989). The Court must nevertheless dismiss it for lack of subject-matter jurisdiction.

The Whistleblower Protection Act provides "most federal agency employees with protection against agency reprisals for whistleblowing activity, such as disclosing illegal conduct." Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002) (citing 5 U.S.C. § 2302(b)(8)). For an employee to avail herself of those protections, however, she must first exhaust certain administrative procedures. Specifically, an employee who alleges that she was the victim of a "prohibited personnel action," including reprisal for whistleblowing, "must first bring her claim" to the Office of Special Counsel. Id. (citing 5 U.S.C. § 1214); see also Weber v. United States, 209 F.3d 756, 758 (D.C. Cir. 2000) (describing whistleblower-protection procedures under Title 5). The OSC will investigate the complaint, and if it finds any such prohibited personnel action, will report its findings to the Merit Service Protection Board. Stella, 284 F.3d at 141. If the OSC finds no agency wrongdoing, then the employee herself may bring an action before the MSPB. Id. (citing 5 U.S.C. §§ 1214(a)(3); 1221). Even then, the MSPB's final decision is appealable to the Federal Circuit. Id. (citing 5 U.S.C. § 7703). "Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." Id.

In this case, Gordon's suit founders at the first step. The Court sees no evidence that she first brought her claim to the Office of Special Counsel or that she made any effort to do so. This Court accordingly lacks jurisdiction over this whistleblower challenge and dismisses the claim under Rule 12(b)(1).

9

B. Equal Pay Act

At the outset of her Complaint, Plaintiff alleges broadly that she faced discrimination "based on race, color, national origin, sex, age (Over 40), Equal Pay Act, Retaliation, and Reprisal for prior EEO proceedings and activities." Compl. at 1. Despite this drive-by reference to the Equal Pay Act, she never again invokes the statute, nor does she allege any behavior that might constitute a violation thereof. Even construing Plaintiff's *pro se* Complaint liberally, the Court can detect no allegations that would state a claim cognizable by this statute.

Under the Equal Pay Act, no employer may discriminate against an employee on the basis of sex. See 29 U.S.C. § 206(d). As the plain text makes clear, the Act applies to pay disparities stemming from sex discrimination. "Pay disparities due to other reasons, by contrast, are not actionable." Kangethe v. Dist. of Columbia, 953 F. Supp. 2d 194, 203 (D.D.C. 2013). Yet Gordon never alleges discrimination based on her sex, outside of her aforementioned catchall reference to discrimination based on "race, color, national origin, sex, [and] age." Compl. at 1. Although Plaintiff claims she was denied "equal pay for equal work performed in the same workplace," she expressly identifies her "report of illegal activity [as] a motivating factor in [D]efendant's unlawful practices and unpaid wages." Compl., ¶ 7 (emphasis added). Later, she adds that her "race, black[,] and age[,] 59 years old, were motivating factors in the denial of promotion and unpaid wages for equal pay for equal work." Id., ¶ 10. Plaintiff never once alleges that her sex motivated Defendant to pay her less or that there were men doing similar work at FEMA who were paid more.

As a result, the Court finds that Plaintiff's allegation of unequal pay is best treated as part of her Title VII claims, rather than as a freestanding Equal Pay Act claim. To the extent Gordon

did intend to bring a separate count under the latter statute, the Court dismisses it under Rule 12(b)(6) for failure to state a claim.

C. Title VII/ADEA Claims

The Court now reaches the crux of Gordon's Complaint: the Agency's purported retaliatory and discriminatory actions. Plaintiff alleges principally that her employer retaliated against her for "participating in EEO proceedings and activities." Compl., ¶ 10. Specifically, she claims that Defendant declined to promote her or increase her grade level, improperly transferred her worksite, and harassed and bullied her, all because she had reported "illegal activity" — namely, by filing EEO Complaints. Id., ¶¶ 6-7.

While her Complaint is somewhat opaque, Gordon seems to alternatively suggest that she also suffered direct discrimination "based on race, color, national origin, sex, [or] age." Id. at 1. Although Plaintiff later implies that her race and age were "motivating factors" in Defendant's above conduct, id., ¶ 10, she never again attributes any illegal activity to her sex or national origin. The Court will thus not consider these latter two bases of alleged discrimination. (The Government also contends that Gordon failed to exhaust her national-origin claim. But because Plaintiff makes no freestanding allegations of discrimination based on "national origin," her problem is failure to state a claim, not failure to exhaust it.)

Turning to the merits, Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed any practice made an unlawful employment practice" under the statute. See 42 U.S.C. § 2000e-3(a). Similarly, the statute makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA adds age discrimination to the mix. See 29 U.S.C. § 623. In cases like this one, in which there is no direct

evidence of retaliation or discrimination, the Court must begin with the familiar three-part burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See McGrath v. Clinton, 666 F.3d 1377, 1383 (D.C. Cir. 2012). Under this framework, the plaintiff has the initial burden of establishing by a preponderance of the evidence a *prima facie* case of retaliation or discrimination.

To clear that hurdle as to retaliation, a plaintiff must plead: "(1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." Harris v. D.C. Water & Sewer Auth., 701 F.3d 65, 68 (D.C. Cir. 2015) (quoting McGrath v. Clinton, 666 F.3d 1377, 1379-80 (D.C. Cir. 2012)). But when the defendant offers a legitimate, non-retaliatory reason for its decision, the court "need not – and should not – decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, it simply looks at whether the employee has produced sufficient evidence for a reasonable jury to conclude that the asserted non-retaliatory or non-discriminatory justification for the action is a pretext for retaliation. Gaujacq v. EDF, Inc., 601 F.3d 565, 577 (D.C. Cir. 2010).

In this case, the Court will assume that Plaintiff means to allege that Defendant's complained-of behavior constituted both retaliation and direct discrimination. In addition, there is no dispute that Gordon engaged in protected activity by filing EEO Complaints. As to transgressions, Plaintiff alleges principally that Defendant denied her an accretion-of-duties promotion (and thereby denied "equal pay" for her "equal work"). See Compl., ¶¶ 7, 10. She also suggests that FEMA improperly transferred her to its Crystal City office and tolerated a hostile work environment. The Court takes each accusation in turn.

1. *Accretion-of-Duties Promotion*

"[A] refusal to promote is a materially adverse action." Taylor v. Solis, 571 F.3d 1313, 1321 (D.C. Cir. 2013); see also Wiley, 511 F.3d at 127 (considering whether plaintiff was denied an "accretion of duty" promotion "as a result of illegal discrimination or retaliation"). The Government, however, offers a legitimate explanation for its denial of Plaintiff's promotion: quite simply, "she was not assigned, and did not complete duties, at the GS-9 level." Def. MSJ, Statement of Facts, ¶ 14. Although the Government references the GS-9 level (perhaps by error), the record, including Plaintiff's own exhibits, shows a promotion to the GS-6 level was similarly inappropriate. The desk audit (or independent review) revealed that Gordon's work largely included "the management of forms, reports, and directives," and reported "no substantial changes in [her] position that warrant an upgrade to the GS-06 level." Compl., Exh. 1. When a "desk audit indicate[s] that the job was in fact" a GS-5 position, the audit qualifies as a "nondiscriminatory (and nonretaliatory) reason for the denial." Montgomery v. Chao, 546 F.3d 703, 707 (D.C. Cir. 2008).

Before the EEO, Plaintiff also alleged certain irregularities in the promotion process, including 1) a delayed desk audit, and 2) receipt of a yearly evaluation from an improper official. See 2012 EEO Compl. at 2-3. Although her Complaint makes no mention of those actions, Plaintiff does attach email chains referencing both disputed decisions. See Compl., Exh. 1. In an abundance of caution, the Court thus addresses the allegations.

To begin, the Court doubts that either claim, standing alone, would constitute a materially adverse action for Title VII purposes. In any event, the Government once again offers neutral explanations for its actions. First, Plaintiff's desk audit became delayed after she failed to follow the correct procedures for requesting one. See SOF, ¶ 13. In an affidavit, her supervisor avers

13

that he twice returned paperwork to Plaintiff to ensure it was properly filled out. See Leckey Aff., ¶ 37. So too with Gordon's allegation that an improper agency employee, Tammi Hines, was the one who rated her during her year-end evaluation. The Government explains that Hines rated Plaintiff because at the time, "Hines served as Plaintiff's supervisor." SOF, ¶ 1. As the Deputy Privacy Officer, Hines acted as Plaintiff's supervisor "by way of delegation" from the Agency's Chief Administrative Officer. See Leckey Aff., ¶ 53. In such a position, Hines had every reason to complete the yearly performance review.

Plaintiff has offered no timely evidence to impugn any of the Government's alleged non-discriminatory motives. "Without such evidence, [she] cannot prove that the failed promotion was a pretext for either discrimination or retaliation." Wiley, 511 F.3d at 156.

### 2. *Lateral Transfer*

The same is true for Gordon's lateral transfer from the Washington Design Center to the Crystal City, Virginia, office. In her 2012 EEO complaint, Plaintiff alleged that the Agency improperly transferred her in retaliation for protected activities. See 2012 EEO Compl. at 7. Although her Complaint before this Court neglects to mention any lateral transfer, her attached documents do include emails referencing the transfer. See Compl., Exh. 1. Once again, the Court will construe the pleadings liberally and treat the lateral transfer as among those "retaliatory actions" charged in the Complaint.

The D.C. Circuit recently affirmed that at least some lateral transfers (or denials thereof) "can certainly be actionable under Title VII." Ortiz-Diaz v. HUD, No. 15-5008, 2017 WL 3559454, at *4 (D.C. Cir. Aug. 11, 2017). Even if this transfer so qualified, however, the Government once again offers an undisputed and non-discriminatory explanation for the action. Crystal City had long been Plaintiff's base of operation, and she received a temporary transfer to

14

the Washington Design Center only after lodging a harassment complaint against her supervisor, Hines. See Leckey Aff., ¶ 60. On March 8, 2012, however, an administrative inquiry determined that such complaint was "frivolous" and "could not be substantiated." Id. Her supervisor therefore concluded Plaintiff should return to the FEMA Privacy Office in Crystal City, where all other employees were located. Id. Such a legitimate business interest defeats Gordon's claim in this case,

        3. *Hostile Work Environment*

In next alleging the existence of a "Hostile Work Environment," Gordon claims that she endured "intense [b]ullying" by co-workers. See Compl., ¶¶ 6, 10. To prevail on such a claim, a plaintiff must demonstrate that she was a member of a protected class and faced "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). In evaluating a hostile-work-environment claim, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). By adhering to these standards, the Court thereby "ensure[s] that [employment-discrimination law] does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." Faragher, 524 U.S. at 788 (citations and internal quotation marks omitted).

Gordon here makes a sweeping accusation of "[h]arassment for over a long period of time that eventually le[d] up to [her] being physically assaulted while on duty at work." Compl.

at 5. The Complaint offers no more particulars, but the Court assumes that the assault Plaintiff refers to is a September 16, 2011, incident with her supervisor, Hines. According to Gordon's EEO complaint, Hines "[c]ornered [her] in a small Conference Room located at Crystal City, VA and beg[a]n to harass [her] for reporting them." 2012 EEO Compl. at 7. In an incident report attached to the Complaint, Gordon alleged that after the "forced meeting," Hines confronted her in her office and physically blocked the doorway to prevent her exit. See Compl., Exh. 1.

The Government fills in the details of the September 16, 2011, incident. In its undisputed account, Plaintiff "got upset when she was directed to make changes on a document that was to be given to a high-level agency official." SOF, ¶ 23. In an affidavit, Hines averred that the September 16, 2011, meeting was a "walk through" discussion of a major presentation. See Def. MSJ, Exh. 5 (Affidavit of Tammi Hines), ¶ 62. Hines apparently asked Plaintiff to input minor changes to the presentation, as discussed during the meeting. Id. Gordon resisted, arguing the task fell outside her job description. Id. After the meeting, Hines stopped by Plaintiff's office "to ask if she understood the task and if she had any questions." Id.

Treating these as undisputed facts, Plaintiff's allegations fall far short of establishing "discriminatory intimidation, ridicule and insult" that is "sufficient severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (citation and internal quotation marks omitted). Rather, her dispute with a supervisor falls within "the ordinary tribulations of the workplace." Faragher, 525 U.S. at 788 (internal quotation marks omitted). This is true even if the Court considered Plaintiff's allegations as accurate.

The Complaint is silent as to other instances of bullying or harassment, and Plaintiff's 223 pages of supporting documents make scant reference to specific incidents. In its Motion for

Summary Judgment, DHS generously addresses allegations in Plaintiff's 2012 EEO complaint, including: 1) a co-worker shouting at her in an angry voice, 2) being told, "Nobody likes you"; and 3) A co-worker screaming at Plaintiff about the scope of her job duties.  See Def. MSJ at 27.  Plaintiff's Complaint, however, never alludes to those allegations, nor does it incorporate or reference her 2012 EEO complaint.  The allegations, accordingly, are not properly before this Court.  In any event, even considered *in toto*, they amount at most to "a few isolated incidents of offensive conduct."  Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  The "cumulative effect of many *de minimus* harms" still does not amount to a hostile work environment.  Dudley v. Wash. Metro. Area Transit Auth., 924 F. Supp. 2d 141, 172 (D.D.C. 2013).

In addition, if Plaintiff had effectively alleged treatment that rose to the level of a hostile work environment, her claim would still fail for want of a causal nexus between her protected status or activity and the alleged mistreatment.  Title VII does not ban all workplace hostility; instead, it makes employers liable only when hostility is directed at a protected class or those engaging in protected activities.  Put another way, "the plaintiff must establish a causal connection between the harassment and her protected activity [or status] to succeed on the claim."  Lewis v. District of Columbia, 653 F. Supp. 2d 64, 81 (D.D.C. 2009).  "There is an evidentiary component to this principle: evidence that bears no connection to the plaintiff's protected status cannot support a hostile work environment claim."  Mason v. Geithner, 811 F. Supp. 2d 128, 179 (D.D.C. 2011) (internal citations omitted).

Here, Gordon has provided no evidence supporting her conclusory allegations that the Agency treated her poorly in retaliation for her protected activity or because of her race or age.  Based on the evidence proffered – or, more precisely, the lack thereof – and drawing all reasonable inferences in favor of Plaintiff, the Court finds that she has failed to raise a genuine

dispute of fact regarding a hostile work environment. In these circumstances, the Court must grant Defendant's Motion with respect to that claim as well.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss without prejudice with respect to the Whistleblower Protection Act claim for failure to exhaust administrative remedies. It will also dismiss without prejudice Plaintiff's Equal Pay Act claim for failure to state a claim upon which relief can be granted. Finally, it will grant Defendant's Motion for Summary Judgment as to the retaliation and discrimination claims. A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 24, 2017